(174 App. Div. 139)

### WIEDERHOLD v. KOEHLER et al.

(Supreme Court, Appellate Division, Second Department. October 6, 1916.)

VENDOR AND PURCHASER &⇒130(4)—PURCHASE AT FORECLOSURE—EFFECT ON TITLE.

Where executors without power of sale purchased overdue mortgage against estate, took an assignment thereof, and one, after the other's death, purchased at foreclosure sale to which all interested persons were parties for a nominal sum, but charged himself with the full value of

the property, the transaction was not void, but the property became personalty, and, when included without objection in his final account, settled, and approved, its validity as against the parties was, under Code Civ. Proc. § 2742, conclusive, so as to make marketable title; the only effect of the transaction being to render the executors liable for loss therefrom.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 246; Dec. Dig. ⊚⟷130(4).]

Submission of controversy between Emil Wiederhold and Charles Koehler and another. Judgment for defendants.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

Gustave J. Wiederhold, of Woodhaven, for plaintiff.
Thomas H. Williams, of Brooklyn, for defendants.

RICH, J. On February 21, 1916, the parties entered into a written contract or agreement, by the terms of which the defendants obligated themselves to convey to the plaintiff certain real property in the borough of Queens, by a full covenant warranty deed, free and clear of all incumbrances. One Maria Joepp died testate on June 1, 1896, owning said property subject to an existing mortgage of $1,500. She left surviving a husband, three sons, and two daughters, all of full age. By her last will and testament, duly admitted to probate in the Surrogate's Court of Queens County, she devised and bequeathed all of her real and personal property to her husband for life, and to her children in fee at his death. Letters testamentary issued to her husband, John L. Joepp, and her son, Bernhard Joepp, named in her will as executors, who qualified and entered upon the discharge of their duties as such. The will contained no power of sale. On March 15, 1898, said executors purchased the $1,500 mortgage with funds of the estate, and took an assignment thereof. Thereafter one of the daughters, Ottillia Paddock, died intestate, leaving her surviving her husband, Judson H. Paddock, two infant sons, and an infant daughter. The father was duly appointed the general guardian of his infant children on September 19, 1911. John L. Joepp, the life tenant, and one of the executors, died July 22, 1903.

On December 8th of that year, Bernhard Joepp, as the surviving executor of his deceased mother, commenced an action in the Supreme Court to foreclose the $1,500 mortgage which proceeded to judgment and sale. The premises were purchased by him at such sale for the sum of $500. All of the surviving children of the deceased, Maria Joepp, and the children of her deceased daughter, Ottillia Paddock, were made parties defendant in said action. Thereafter, and on May 4, 1905, he sold and conveyed said property to one Ernst for $3,500, and in March, 1913, filed his final account as surviving executor, in which he charged himself with the proceeds of said property, $3,500, as part of the estate of his testatrix. In the proceeding for the judicial settlement of said account, all of the surviving children of the testatrix, as well as the children of the deceased daughter, were made parties, and duly cited to appear therein, and such children, with their father, their general guardian, did appear therein by attorney. On

April 22, 1913, a decree was duly made and entered in such proceeding, finally settling the account of the surviving executor, as filed, which directed that the respective distributive shares of the adult parties interested in the estate be paid them, and the shares of the infants, amounting to the sum of $317.61 each, be paid to their general guardian. This submission does not show specifically that the defendants have any title to or interest in the realty, or that the surviving executor distributed the estate of his testatrix as directed by the decree, made on the final accounting, but it will be assumed, in disposing of the case, that the defendants acquired such title to the realty as was possessed by Ernst, the immediate grantee of the surviving executor, and that the latter paid the distributive shares of the estate to the persons entitled thereto.

At the time fixed for the closing, the plaintiff refused to accept the deed tendered, and rejected the title upon the ground that it was unmarketable for the following reasons:

"That the examination of such title disclosed the fact that the executors under the will of Maria Joepp, deceased, who died seised of the premises in question, purchased and took an assignment of a mortgage, a lien upon said premises at the time of her death, and the sole surviving executor thereafter foreclosed said mortgage and purchased and took title to said premises as such sole surviving executor. That there was no power of sale in the will, and the foreclosure of said mortgage did not result in converting such realty into personalty, and such executor was without power to convey the premises which he subsequently did, and the premises by mesne conveyance thereafter coming to the said defendants."

To these grounds the plaintiff now adds the additional objection that the executors were without power to take an assignment of the mortgage because the estate was not liable on the bond to which it was collateral; the same having been given by former owners.

I think the contentions of the plaintiff are without merit, and that the defendants must have judgment. The will contained no power of sale, and the executors as such had no rights in or dominion over the real property of which their testatrix died seised; their representative powers and responsibilities were limited to her personal estate. Conceding, as the plaintiff contends, that they were without authority to invest the estate funds in the purchase of the mortgage, its purchase and assignment to them was not void, the only effect of such unauthorized act being to render them personally liable to their estate for any loss arising therefrom. The fact that the mortgage was a lien upon the real property of their testatrix created no different conditions or greater liability on their part than would have existed had it covered the property of a stranger, in the absence of any showing of an intended fraud upon the devisees or financial loss to them. The mortgage was past due, with the attendant possibility of its foreclosure, in which event the interests of both the life tenant and remaindermen would have been jeopardized and possibly extinguished. One of the executors was the life tenant of the property, and the other a remainderman; their interests were affected by the purchase of such mortgage equally and to the same extent as those of the other devisees. A strong presumption of good faith attaches to the trans-

action, and it evidences a desire to protect the interests of all the devisees rather than to obtain any advantage over them. This presumption is strengthened by the fact that the surviving executor by foreclosing the mortgage divested himself of any interest in the realty, exactly the same and to the same extent as the interests of the other devisees were divested, and although he purchased the property upon the foreclosure sale for $500, he accounted for and paid over to the devisees and persons interested in the estate their share of the $3,-500 he received upon the subsequent sale of the property. No loss was sustained by the devisees, and no injury resulted by the foreclosure of such mortgage, and while the acts of the executors in so doing were unusual, it is not made to appear that the interests of all persons interested in the estate were not conserved and protected thereby. I think the same rule of law obtains that would have existed under the foreclosure of a mortgage owned by the deceased at the time of her death, upon the lands of a stranger, and the property purchased upon such sale by the executors and subsequently sold and conveyed by them for full value to an innocent purchaser. The realty, in consequence of the purchase upon the foreclosure sale, became personalty in their hands, for which they could be compelled to account, and which they could sell and give a valid title to, although no power of sale was contained in the will of their testatrix. Haberman v. Baker, 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 611; Lockman v. Reilly, 95 N. Y. 64. The validity of the title of the purchaser from the surviving executor cannot be successfully attacked, more than 10 years having elapsed since such foreclosure and sale, since which time the title has changed several times, with no question raised to its validity. McCarty v. Downes, 161 App. Div. 667, 146 N. Y. Supp. 973. Furthermore, under the provisions of section 2742 of the Code of Civil Procedure, the decree on the judicial accounting of the surviving executor is conclusive upon all parties cited or appearing in that proceeding, including the infants who appeared by attorney and received their share of the full proceeds resulting from the sale of the mortgaged premises, which they have retained. All of the persons interested have been twice regularly before the court, first on the foreclosure of the mortgage and again on the judicial accounting of the surviving executor. No objection was made as to the legality of the purchase of the mortgage by the executors, its foreclosure or purchase at the sale therein by the surviving executor, and the full value of the property was distributed under the decree of the Surrogate's Court.

I think the title marketable, and that the defendants are entitled to judgment against the plaintiff for the specific performance of his contract, but, under the terms of the submission, without costs.

JENKS, P. J., and THOMAS and CARR, JJ., concur. PUTNAM, J., concurs in the result.